Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 605 - *1, 2, 3* | **DATE** | 1/27/2004 |
| **CASE TITLE** | United States of America vs. LaGrou Distribution System, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10 Feb. 04 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Stewart's Motion to Dismiss the Indictment and Motion to Suppress Evidence, and Faucher's Motion to Dismiss the Indictment are DENIED. Enter excludable delay pursuant to 18:3161(h)(8)(B)(iv) to begin January 27, 2004 and end February 10, 2004. (X-T4)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 02 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | WAP | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 2 7 2004
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>LAGROU DISTRIBUTION SYSTEM, INC., et al.,<br><br>        Defendants. | Case No. 03 CR 605<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendants Jack Stewart ("Stewart"), Michael Faucher ("Faucher"), and David Smith ("Smith") are charged with five counts related to charges of conspiracy and statutory violations pertaining to alleged unsanitary operations at a meat and poultry storage warehouse. Count One charges Stewart, Faucher, and Smith with conspiracy to violate the Meat and Poultry Acts, 21 U.S.C. §§ 458(a)(3), 461(a), 610(d) and 676(a), as well as the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(b), 333(a)(2), and 343(a)(4). Count Two charges Stewart, Faucher, Smith, and LaGrou Distribution System, Inc. ("LaGrou") with felony violation of the Poultry Act. Count Three charges Stewart, Faucher, Smith, and LaGrou with felony violation of the Meat Act. Count Four charges Stewart, Faucher, Smith, and LaGrou with felony violation of the Food, Drug and Cosmetic Act. Count Five charges Smith with a misdemeanor violation of the Meat Act. Presently before the Court are



60

Stewart's Motion to Dismiss the Indictment and Motion to Suppress Evidence, and Faucher's Motion to Dismiss the Indictment.

## DISCUSSION

### A. Stewart's Motion to Dismiss the Indictment

A proper indictment serves three functions. It states in plain and concise language the essential facts and all the elements of the charged offense, informs defendants of the nature of the charge, and enables defendants to avoid repeated prosecution for the same offense. *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985). In evaluating the sufficiency of an indictment, common sense and reason prevail over technicalities. *See United States v. Climatemp, Inc.*, 482 F. Supp. 376 (N.D. Ill. 1979). The indictment is not tested on the strengths or weaknesses of the government's case, but rather is examined solely for its sufficiency in charging the offense. *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988).

Here, Stewart argues that the indictment should be dismissed because the facts show "entrapment by estoppel." In support of this claim, Stewart states that from 1992 to 2002 federal inspectors gave the warehouse acceptable ratings, even though such inspectors were purportedly aware of the rodent problem. In essence, Stewart argues that such purportedly favorable reports amount to "affirmative misleading conduct" that Stewart reasonably relied upon in determining that the rodent control practices at the

warehouse did not violate federal law. Relying on *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992), Stewart claims that he is entitled to the doctrine of "entrapment by estoppel" as a means to escape the indictment.

The government responds by arguing that the doctrine of "entrapment by estoppel" is an extremely rare affirmative defense that applies only where a government official affirmatively assures a defendant that certain conduct is legal and the defendant reasonably relies upon this assurance. *See United States v. Rector*, 111 F.3d 503 (7th Cir. 1997). Here, the government argues, Stewart provides no support that the federal inspectors were actually aware of the severity of the rodent-control problems at the warehouse, much less that they affirmatively approved of Defendants' practices. The government notes that the indictment charges Defendants with concealing evidence of the alleged infestation problems. Moreover, the government claims that even if Stewart had some evidence on this issue, a pretrial motion to dismiss is not the proper vehicle for addressing the sufficiency of the evidence.

The government has the better argument here. In his motion, Stewart fails to provide any support for his allegations that federal inspectors affirmatively approved of the same type of rodent-infestation conditions for which Stewart is now being prosecuted. Stewart asks for a hearing on this motion "where the

factual issues can be properly developed." However, Rule 12(b) does not allow this Court to provide such a preliminary hearing to resolve disputed factual issues that are at the heart of this case. *See United States v. Pergler,* 1998 WL 887113 (N.D. Ill. 1998); *United States v. King,* 581 F.2d 800 (10th Cir. 1978). Instead, a trial is the proper vehicle for developing factual issues pertaining to the affirmative defense of entrapment estoppel. Stewart will undoubtedly be afforded that opportunity should this case reach trial.

### B. Faucher's Motion to Dismiss the Indictment

Faucher argues that the indictment should be dismissed because it fails to (1) "identify the objective source" of Faucher's alleged duty to maintain sanitation standards, (2) "identify, with sufficient particularity, the thing[s] the defendants allegedly intended" to take; and (3) alleged materiality. Faucher also argues that Counts Two and Three must be dismissed because they are duplicitous and that the word "improperly" should be stricken from these Counts.

Faucher's initial attack on the indictment is that it claims that he is responsible for "maintaining sanitation standards" at the warehouse, but fails to describe the "objective source of the duty." The crux of Faucher's argument here is that the indictment lacks sufficient particularity regarding the purported source of Faucher's duty. As a result, Faucher claims that he is "unable to

factual issues can be properly developed." However, Rule 12(b) does not allow this Court to provide such a preliminary hearing to resolve disputed factual issues that are at the heart of this case. *See United States v. Pergler,* 1998 WL 887113 (N.D. Ill. 1998); *United States v. King,* 581 F.2d 800 (10th Cir. 1978). Instead, a trial is the proper vehicle for developing factual issues pertaining to the affirmative defense of entrapment estoppel. Stewart will undoubtedly be afforded that opportunity should this case reach trial.

### B. Faucher's Motion to Dismiss the Indictment

Faucher argues that the indictment should be dismissed because it fails to (1) "identify the objective source" of Faucher's alleged duty to maintain sanitation standards, (2) "identify, with sufficient particularity, the thing[s] the defendants allegedly intended" to take; and (3) alleged materiality. Faucher also argues that Counts Two and Three must be dismissed because they are duplicitous and that the word "improperly" should be stricken from these Counts.

Faucher's initial attack on the indictment is that it claims that he is responsible for "maintaining sanitation standards" at the warehouse, but fails to describe the "objective source of the duty." The crux of Faucher's argument here is that the indictment lacks sufficient particularity regarding the purported source of Faucher's duty. As a result, Faucher claims that he is "unable to

ascertain the nature and cause of the accusations, or prepare a defense."

The government responds by arguing that an indictment need not identify with particularity the factual basis of every allegation. In addition, the government states that there is ample legal and factual basis upon which Faucher can locate his duty to maintain sanitation standards. The government cites *United States v. Park*, 421 U.S. 658, 666 (1975) for the proposition that a defendant who is in a position of authority and responsibility can be held criminally liable for violation of FDA sanitation standards, even though such a defendant did not personally participate in the criminal conduct. The government also attaches as an exhibit an application for USDA inspection where Faucher apparently certified under penalty of perjury to conform to certain sanitary laws and regulations.

The government's argument prevails here. In *Park*, the United States Supreme Court held that persons in Faucher's position had an affirmative duty to abide by food sanitation laws. There can be no higher "objective source" for this duty than the United States Supreme Court. The indictment is otherwise sufficient to inform Faucher of the nature of the charges and allow him to present a defense. (The Court does not need to consider the exhibit that the government attaches to reach its decision here.)

Faucher next argues that the indictment should be dismissed because it fails to identify with particularity the things that he allegedly intended to take from the alleged victims. The government responds by stating that it is "quite clear from a plain reading of the indictment" that Defendants intended to take money from their victims by, among other things, misrepresenting and concealing the true condition of their warehouse.

The Court finds that a fair reading of the indictment clearly shows that the government is alleging, among other things, that Defendants engaged in a scheme to defraud paying customers by failing to provide a sanitary storage place for customers' products. This purportedly resulted in the spoilage of significant amounts of products. The unmistakable inference is that Defendants sought to profit by taking customers' money and yet providing only inadequate services. It is well established that an indictment need not spell out every allegation in excruciating detail and Faucher cannot claim that he is not on notice of the alleged offenses.

Finally, Faucher argues that the indictment is deficient because it fails to include the term "materiality" with regard to the statutory charges that include an "intent to defraud." Faucher relies on *Neder v. United States*, 571 U.S. 1 (1999) and *United States v. Gee*, 226 F.3d 885 (7th Cir. 2000) for the proposition that materiality must be a component of an "intent to defraud"

charge. The Court, however, disagrees with this interpretation of the case law and agrees with the government's position that the concept of materiality is inapplicable to the statutory scheme at issue here. Specifically, the statutory scheme here asks only whether Defendants' conduct included, among other things, an intent to defraud. Unlike the fraud statutes at issue in *Neder*, here affirmative statements of falsehood are not necessary, and thus the concept of materiality is inapplicable. Accordingly, *Neder* and its progeny should not be read as imposing elements that render the statutory scheme at issue here unintelligible.

Faucher also claims that Counts Two and Three must be dismissed because they are duplicative. Specifically, Faucher argues that Counts Two and Three are duplicitous because the statutes at issue address both transportation and storage of adulterated food products. Because acts of storage and transportation are discrete and identifiable, Faucher argues that separate counts are required. Thus, as presently drafted, Counts Two and Three leave him with "no way of determining the particular acts of food transportation/storage at issue" more than a 3.5 year time period. Faucher also argues that the present indictment runs the risk that a jury could find him guilty based on a non-unanimous verdict because different subgroups of the jury could rely on different acts to reach their verdict.

The government counters by stating that it is charging defendants only with the storage - and not shipment - of adulterated meat and poultry products. Thus, there is no risk of duplicity on that basis. The government also claims that Counts Two and Three pertain to a continuing course of conduct, namely storing products over the course of 3.5 years, that cannot be parsed into distinct and separate events. The government relies primarily on *United States v. Berardi*, 675 F.2d 894, 899-900 (7th Cir. 1982) for this position.

The Court agrees that the indictment pertains to the storage - and not shipping - of the alleged adulterated products. In addition, the Court agrees that the reasoning and policy behind *Berardi* control here. The events at issue here can be fairly considered as part of a continuing course of conduct and it would be extraordinarily difficult to parse out each storage act into a separate count. The charges here provide Faucher with adequate notice about the course of conduct at issue and also foreclose the possibility that he will either be prosecuted again for the same acts or that a non-unanimous verdict could be reached as to the essential elements of the crime.

Finally, Faucher argues that the Court should strike the word "improperly" from the sentence "improperly stored food products" because none of the statutes named in the indictment use such terms. In essence, Faucher argues that the phrase "improper

storage" creates an unconstitutionally vague standard that would permit jurors to decide Faucher's guilt or innocence based on subjective notions of good food storage. The government, in turn, responds that the indictment alleges that the "improper storage" merely describes, in a more-specific manner, the "act" that purportedly violates the statute's prohibition of products "held under unsanitary conditions."

The Court finds that the use of the word "improper" in the present context does not create an unconstitutionally vague standard. The statute clearly identifies the standard at issue here and the government's use of "improper storage" merely specifies the controlling standard of "any act . . . which is intended to cause or has the effect of causing such products to be adulterated or misbranded." *See, e.g.,* 21 U.S.C. § 458(a)(3).

### C. Stewart's Motion to Suppress

Stewart seeks to suppress "all evidence seized" during inspections that occurred after May 30, 2002. Stewart claims that although the initial inspections of May 28 through May 30, 2002 were lawful pursuant to administrative and regulatory authority, the focus of federal inspectors changed to criminal investigation once the Order of Detention effectively "shut down" the warehouse on May 30, 2002. Thus, Stewart claims there were no regulatory or administrative interest in protecting the public health and welfare at the point. As a result, Stewart contends that subsequent

inspections that occurred for at least eight days after May 30, 2002 required a warrant. Stewart asks for a hearing on these issues, as well as an order suppressing this evidence.

The government responds by arguing that, as a threshold matter, Stewart has no standing to raise this issue because he does not – and cannot – allege that "he had a reasonable expectation of privacy in the expansive food storage areas" of the warehouse, much less that society would recognize such an expectation of privacy. Even if Stewart had standing, the government contends that defendant Smith testified in a plea agreement that he gave consent to the inspections at issue. The government also attaches a June 19, 2002 letter purportedly written by Stewart requesting an FDA inspection to show consent.

It is well established that a business owner's expectation of privacy in commercial property is significantly less than such expectation in a private home. *See New York v. Burger*, 482 U.S. 691 (1987). Further, any expectation of privacy is even further attenuated in commercial property that is used in a "closely regulated" industry. *See id.* In a closely regulated industry, such as the food storage and shipping industry, warrantless searches do not violate the Fourth Amendment, provided that such searches are within the regulatory scheme. *See, e.g., United States v. New England Grocers Supply Co.*, 488 F. Supp. 230, 237

(D. Mass. 1980); see also *United States v. Gel Spice Co., Inc.*, 601 F. Supp. 1214 (E.D.N.Y. 1985).

Here, Stewart admits that the inspections that commenced on May 28, 2002 and continued through May 30, 2002 "were admittedly lawful and in furtherance of [] regulatory duties." Stewart Mem. at 3. However, such purposes allegedly ended on May 30, 2002, when the warehouse was purportedly "shut down." Although Stewart cites *New England Grocers Supply Co.*, 488 F. Supp. at 239, for support for the proposition that the inspections here exceeded the regulatory scheme, the case actually supports the government's position here. In *New England Grocers Supply Co.*, defendants argued that evidence gained during two warrantless administrative inspections — which occurred six months apart — should be suppressed because such inspections were "fishing expeditions" and unreasonable. *See id.* Defendants also argued that the evidence from the second inspection should have been suppressed because the focus of the investigation by then, six months down the road, had changed from a routine administrative inspection to a criminal investigation. *See id.* at 237. The court dismissed defendants' motion to suppress, noting that "FDA agents were not required to suspend the valid warrantless inspections and secure a warrant once they had reason to suspect violations of the Act, so long as the searches were otherwise reasonable in time, manner and scope." *Id.* at 239. Although each inspection extended over a period of

approximately five days, the court found that such a duration was not unreasonable in light of the "very large size" of the warehouse.

Here, Stewart makes no showing either through affidavit or any other means that the 8-day (or longer) inspection period was unreasonable, especially in light of the size of the warehouse here (500,000 square feet) and the fact that multiple administrative bodies were conducting investigations. Stewart also does not indicate that he (or any other defendant) objected in any form to the inspections at issue here. Further, Stewart offers no support for his contention that the continuing inspections beyond May 30, 2002 had no relationship to the purposes of the regulatory scheme. *See New England Grocers Supply Co.*, 488 F. Supp. at 239; *see also Gel Spice Co., Inc.*, 601 F. Supp. at 1218 (refusing an evidentiary hearing on a motion to suppress on the grounds that defendants failed to make a "meaningful factual showing" that the FDA "had conducted searches not in furtherance of administrative purposes, but rather to obtain evidence for a criminal prosecution that was already planned").

Nor does Stewart provide authority for the proposition that if ongoing warrantless administrative inspections provide reason to suspect a potential criminal violation, a warrant must then issue in midstream. In fact, Stewart's own cited authority holds otherwise. *See id.* Thus, Stewart's argument fails on these

grounds. As a result, the Court need not address whether Stewart has standing to raise these issues of or whether he consented to the inspections.

## CONCLUSION

For the foregoing reasons, Stewart's Motion to Dismiss the Indictment and Motion to Suppress Evidence, and Faucher's Motion to Dismiss the Indictment are **DENIED**.

**IT IS SO ORDERED.**

---
Harry D. Leinenweber, Judge
United States District Court

Date: January 27, 2004